## STATE OF MICHIGAN
## IN THE
## CIRCUIT COURT FOR THE COUNTY OF KALAMAZOO

EUGENE STANSBERRY, an individual

File No.: C08-0021 CZ

Plaintiff

Hon.:

Pamela L. Lightvoet

v

**COMPLAINT**

AIR WISCONSIN AIRLINES CORPORATION,
a corporation

Defendant

| WILLIAM F. PIPER, PLC |  |
|---|---|
| William F. Piper (P38636) 3275 Cooley Court, Suite 160 Portage, MI 49024 (269) 321-5008 (269) 321-5009 facsimile wpiper@wpiperlaw.com |  |

The plaintiff, by and through his attorney William F. Piper, PLC, for his Complaint, states as follows:

### JURISDICTIONAL ALLEGATIONS

1. The plaintiff Eugene Stansberry is an individual who resided in the County of Kalamazoo, State of Michigan, and he resided therein at all times relevant to this Complaint.

2. The defendant Air Wisconsin Airlines Corporation is a corporation that did business in the County of Kalamazoo at all times relevant to this Complaint.

3. This lawsuit arises out of the defendant's employment of the plaintiff in Kalamazoo County and its termination of that employment on July 26, 2007.

4. This lawsuit involves damages to the plaintiff that exceed $25,000.00.

5. This lawsuit arises under the Americans with Disabilities Act, 42 USC § 12101 et. seq. and

42 USC § 1981a and the Persons with Disabilities Civil Rights Act, MCL 37.1101 et. seq.

## COMMON ALLEGATIONS

6. Mr. Stansberry restates and realleges as though fully set forth herein paragraphs 1-5 of this Complaint.

7. Mr. Stansberry began working for the defendant in 1980.

8. The defendant laid off Mr. Stansberry in 1993 as a result of a reorganization.

9. The defendant hired Mr. Stansberry again on or about December 1, 1999.

10. Throughout his employment by the defendant, through the date of his termination, Mr. Stansberry did a good job for it.

11. In the mid 1990's Mr. Stansberry's wife developed a severe and disabling blood disorder called Polyarteritis Nodosa, and she had to have expensive medical treatments in order to preserve her life.

12. Mr. Stansberry's medical treaters eventually put her on a drug called remicade, and it substantially improved her condition.

13. In fact, Ms. Stansberry went into remission in approximately December 2005.

14. Ms. Stansberry was covered under the defendant's group medical policy covering the defendant's employees and their dependents.

15. Ms. Stansberry's medical care costs remained expensive.

16. In approximately January 2007 the defendant signed a contract to service Northwest flights at the Kalamazoo/ Battle Creek International Airport.

17. In January 2007 Mr. Stansberry's manager pressured Mr. Stansberry to cut labor costs, which was difficult to do, given the requirement to hire and train new employees for the contracts the defendant serviced, and the turnover of employees.

18. Beginning in February 2007 and continuing through May 2007, 4 employees of the defendant in Kalamazoo received a total of 9 security violation letters from the airport director regarding doors having been left open.

19. Mr. Stansberry counseled the employees about the letters.

20. Mr. Stansberry did not discipline the employees about the letters, because formal discipline regarding such letters is handled by the airport's administration itself.

21. The airport sent courtesy copies of the letters to Mr. Stansberry, although it was not required to.

22. Mr. Stansberry did not forward or fax the letters to his manager, because he had not been directed to do so in writing, or verbally, and because the airport handled the discipline of the employees for security violations.

23. By March 2007 the symptoms of the disease Ms. Stansberry had had returned, and she had to resume the remicade treatments.

24. Unfortunately, the defendant's group health plan administrator denied coverage for the treatments on the alleged grounds that they were experimental, despite the record of success in treating Ms. Stansberry's disease with the remicade treatments.

25. Shortly after she began her remicade treatments through close to the end of July 2007 Mr. Stansberry begged, cajoled and pleaded with the defendant's benefits administrator and his supervisor Mr. Mulder, among others, to have the defendant or its plan, or anyone else, pay for his wife's medical treatments.

26. The defendant or its health plan administrator or both continued to refuse to cover Ms. Stansberry's medical expenses, at least prior to late July 2007.8

27. In May 2007 or afterwards, upon information and belief, the defendant received a letter of

investigation from the Transportation Security Administration regarding the security issues related to the unlocked doors referenced above.

28. Mr. Mulder criticized Mr. Stansberry for not faxing the letters regarding the unlocked doors to him.

29. Mr. Stansberry pointed out to Mr. Mulder that he had never directed him to fax the courtesy letters to him.

30. Mr. Stansberry also suggested to Mr. Mulder that he send a memo to all sites indicating that if they received a letter regarding security issues that they should fax the letters to headquarters (to Mr. Mulder).

31. In mid July 2007 Mr. Mulder sent such a memo to the sites, which suggests that the other sites had not forwarded letters to him regarding security issues either.

32. On May 26, 2007 Mr. Stansberry, who was the person trained to be the Complaint Resolution Manager, helped a customer with a disability to rebook her flight, and he obtained transportation and lodging for her.

33. Mr. Stansberry's supervisor Marvin Mulder angrily asked him why he was doing what he was doing for the customer, and he angrily told Mr. Stansberry that he should have an agent do it.

34. Immediately thereafter Mr. Mulder demanded that Mr. Stansberry come to his office.

35. Mr. Mulder then demanded at least twice that Mr. Stansberry quit, and he also attempted to induce him to quit by telling him that the defendant would pay his health insurance premiums through September 2007.

36. Mr. Stansberry refused to quit.

37. Mr. Mulder then fired Mr. Stansberry.

38. Mr. Stansberry then stated to Mr. Mulder that he was firing Mr. Stansberry because of his wife's medical issues.

39. Mr. Mulder did not negatively respond to Mr. Stansberry's comment until about 30 minutes later.

40. Numerous other City Managers or sites or both supervised, as Mr. Stansberry was, by Mr. Mulder, have received letters of investigation, fines or other disciplinary action for security violations, but those City Managers were not fired by Mr. Mulder.

41. As a result of the discriminatory termination set forth above, the plaintiff and his wife have suffered and will continue to suffer a loss of income and benefits, emotional distress, extreme worry and anxiety, a loss of enjoyment of life, and other consequential and incidental damages.

## COUNT I- ADA AND PWDCRA VIOLATIONS

42. The plaintiff Eugent Stansberry restates and realleges as though fully set forth herein paragraphs 1-41 of this Complaint.

43. The defendant terminated Mr. Stansberry because of his association with, and his advocacy for, persons with disabilities, or a history or record of having disabilities (his wife Debra), in order to save time and money.

44. Alternatively, the defendant terminated Mr. Stansberry because of his association with, and his advocacy for, persons with disabilities, or a person with a history or record of having disabilities (his wife Debra), in order to save money.

45. These claims are actionable under the Americans with Disabilities Act, 42 USC § 12101 et. seq. and 42 USC § 1981 a and the Persons with Disabilities Civil Rights Act, MCL 37.1101 et. seq.

**WHEREFORE**, the plaintiff Eugene Stansberry requests a judgment against the defendant that would include appropriate equitable relief, including reinstatement or front pay; appropriate legal relief, including compensation for his lost income and benefits; compensation for all non economic damages he suffered and will continue to suffer in the future, punitive damages, and all recoverable interest, costs, attorney's fees and any other relief this Court deems fair and just.

Date: January 10, 2008

WILLIAM F. PIPER, PLC

By:_____
William F. Piper (P38636)
Attorney for Plaintiff